The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner.
In his oral arguments, plaintiff has made much of the fact that his attempt to depose Dr. Horton Hinshaw of Tiburon, California was thwarted by the Deputy Commissioner's Order of February 25, 1993, which denied plaintiff's request as untimely and stated that Dr. Hinshaw's testimony and expert opinion as to the nature of plaintiff's illness would not be allowed.
It is first noted by the undersigned that plaintiff's Form 44 has made no mention of any assignment of error in the way of Deputy Commissioner Markham's Order or in Deputy Commissioner Markham's failure to allow in the testimony (by way of affidavit or deposition.)
Plaintiff does mention the issue in his brief, and, in an offer of proof cites Dr. Hinshaw's report, which is attached to Dr. Shanks' deposition transcript as Exhibit 5 (explicitly disallowed by the Deputy Commissioner).
The Full Commission have reviewed the report, dated December 28, 1992, and are of the opinion that even if Dr. Horton Hinshaw's testimony were admitted into the record and if the physician clearly diagnosed the plaintiff with asbestosis, his testimony would not be considered by the undersigned to be credible or convincing in light of Dr. Shanks and Dr. Spangenthal's testimony.
However, in light of the untimeliness of plaintiff's request for the deposition before the Deputy Commissioner, and the failure of plaintiff to specifically assign error to this point as required by the Form 44, the Full Commission, in their discretion, have determined that plaintiff's request for the deposition (or affidavit) testimony of Dr. Hinshaw and for the introduction of his testimony as additional testimony into the record at this time is DENIED.
The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
* * * * * * * * * * *
At the initial hearing before the Deputy Commissioner, the parties submitted pre-trial stipulations as follows which the undersigned find as fact:
STIPULATIONS
1. Defendant is a duly qualified self-insurer, which employs sufficient employees to bring it within the jurisdictional purview of the North Carolina Industrial Commission.
2. An employee-employer relationship existed between plaintiff and defendant.
3. The parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
4. Plaintiff worked for defendant from August 8, 1940 to January 26, 1942, and from June 22, 1942 to August 7, 1942, and from November 16, 1945 until he retired on June 30, 1983.
5. During the time of plaintiff's employment with defendant, Duke Power Company had in its possession, and used, asbestos-containing products.
Subsequent to the initial hearing defendant agreed that plaintiff's average weekly wage was such that the compensation rate applicable in this case is $248.00, the maximum statutory rate for the year 1983.
Also subsequent to the initial hearing, the parties deposed Dr. David E. Shanks on April 15, 1993, and Dr. Selwyn Spangenthal on April 19, 1993. Transcripts of the depositions, with accompanying medical records as exhibits, have been received for the record.
Plaintiff's Exhibit 5 and 6 to the Shanks deposition (Exhibit 6 being the same as Exhibit 3 to the Spangenthal deposition) are STRICKEN from the record. Neither, in fact, was offered in evidence at the deposition of Dr. Shanks. Exhibit 3, to which defendant duly objected at the Spangenthal deposition, was not properly qualified as a business record of Dr. Spangenthal's under the Rules of Evidence. Shanks' Exhibit 5, a two-page letter from Dr. Horton C. Hinshaw, Jr. of Tiburon, Calif. dated December 28, 1992, and addressed to a law firm in Charleston, S.C., was included in the record as a transparent attempt to overcome the impact of the Deputy Commissioner's orders of February 25 and March 24, 1993, denying plaintiff the opportunity to depose Dr. Hinshaw on the grounds stated therein. Even if this letter had been offered in the deposition, it would have been excluded because it likewise was not properly qualified as a business record of Dr. Shanks.
All other objections or motions to strike made at the deposition are OVERRULED or DENIED, as the case may be.
* * * * * * * * * * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is a 72-year-old man who retired in 1983 at the age of 62 after working for Duke Power approximately 40 years. He has worked as an iron worker in construction work. He first started to work at Duke Power at the age of 18, and worked for 2 years as a steel worker helper. After that he was in the navy for several years working in the CB's. After that he returned to Duke Power in 1945 working continuously until 1983.
2. After returning to Duke Power, plaintiff came back to work as a steel worker. He was involved in putting up buildings, working around boilers, putting up air ducts, heavy rigging, which was setting up all the heavy machinery. He usually worked 8-10 hours per day, at least 5 days per week. He was a steel worker until 1960 and then became a supervisor and ran a revitting gang. Revits were discontinued in 1966, and at that time Duke Power started to use bolts.
3. Plaintiff was also involved as supervisor of a raising gang, which put the steel up. After this in 1968, he became a crafts lieutenant, and was in charge of a steel workers group, doing this until his retirement. He was responsible for 250-300 people. He has been exposed to asbestos fiber in that in working around the boilers, especially around the steam plants, he was in the vicinity of insulators who were putting asbestos fiber around the boilers and ducts. In the work of fabrication he would have asbestos fiber generally in the air and in his vicinity. He recalls that the environment was fairly dusty, and remembers that when cleaning up walkways, that starting the hammers in revitting would stir up the asbestos dust so that at times he could not see because of the asbestos fiber in the air. He has been around asbestos fiber since at least 1968 on a regular basis.
4. Although exposed to asbestos fibers, plaintiff does not suffer from asbestosis.
5. On June 7, 1989, Dr. H.F. Easom, chairman of the Industrial Commission's Advisory Medical Committee, wrote plaintiff: "We are pleased to report that we do not feel you have asbestosis. The findings [of Dr. Shanks' examination report and chest x-rays] are consistent with asbestos associated pleural thickening but not consistent with significant respiratory impairment or interstitial lung disease". (The report of the Advisory Committee is part of the record and is accepted as expert testimony under G.S. 97-71).
6. On May 1, 1992, five months before the hearing in this case, Dr. Spangenthal wrote plaintiff's then counsel as follows: "This patient did have a CT scan which revealed some extensive pleural plaque formation in keeping with extensive asbestos exposure. The high resolution CT scan revealed few areas of fibrotic change. Although this could possibly be seen with lung scarring as well as be a nonspecific finding it is probably related to some pulmonary fibrosis as a result of his asbestos exposure. However, he does not have any clinical evidence of asbestosis and the amount of scarring present on his chest x-ray as well as on (t)he CT is minimal".
7. On cross-examination at his deposition, Dr. Spangenthal testified that he could not say to a reasonable degree of medical certainty, that it is more likely than not that any lung scarring he saw was caused by asbestos.
8. On cross-examination at his deposition, Dr. Shanks testified that he could not say to any degree of reasonable medical certainty that plaintiff does, in fact, have asbestos-related fibrotic changes in his lungs.
9. Both physicians were asked about the high-resolution CT scan which was performed by Dr. E. Newman of Charlotte Radiology on August 15, 1991. Both physicians expressed an opinion in response to the questions asked of them by the plaintiff's counsel. The nature of the questions and responses suggested that, based upon findings of fibrotic changes within the lungs by Dr. Newman, both physicians were prepared to make certain findings with respect to asbestosis. However, both physicians testified that they had neither examined the original CT scans, nor were they competent to do so. In reality, what Dr. Newman found is reflected on his notes: ". . . The process has a whirled appearance and therefore raises the possibility of some round atelectasis. Also, its fairly focal nature is not due to round atelectasis could be due to some post-inflammatory scarring . . . . . . While there are a few very minimal areas suggestive of some fibrotic change, the findings are so minimal as to be of questionable clinical significance . . . . . . more focal process posteriorly at the left base which could either represent an area of round atelectasis or possibly an area of post-inflammatory scarring . . ."
10. The sole comment from Dr. Newman, who was the only physician who actually saw the CT scan, was that there was possibly something there, but the "findings are so minimal as to be of questionable clinical significance".
11. Having failed to secure sufficient convincing evidence to support a finding of asbestosis, plaintiff's attorneys attempted to convert the plaintiff's condition of pleural plaque into a compensable condition. As noted by both of the attending physicians, pleural plaquing is a precursor, or marker condition which indicates exposure to asbestos fibers. The condition does not affect plaintiff's ability to breathe. Plaintiff's attorneys attempted to obtain testimony that the pleura was, in fact, a portion of the lung. However, both of the physicians effectively rebutted this line of logic.
12. Plaintiff does suffer from lung disease, but that disease is the direct result of his cigarette smoking, and is unrelated to any exposure which he may have had to asbestos. Dr. Shanks, who is plaintiff's treating physician, testified at length regarding the actual cause of plaintiff's breathing condition:
 Q. Sterlin Shelby is suffering from emphysema, is he not?
 A. He does have some chronic obstructive pulmonary disease, he does have a history of cigarette smoking and does have small airway obstruction on his pulmonary function test; and putting that together would indicate that he does have some emphysema.
 Q. The chronic obstructive lung disease that you found is entirely consistent with cigarette smoking, is it not?
A. That's correct. (Shanks depo., pp. 48-49)
13. On cross-examination, Dr. Shanks admitted that all the medications with which he is treating the plaintiff are directly related to the plaintiff's long history of cigarette smoking:
 A. (By the witness) the reason for that is because of his smoking history, which has been significant. Even though he has quit a good number of years ago, it would be more appropriate to be related to obstruction and emphysema.
 Q. (By Mr. Brooks) so the bronchodilators you are giving him are related to the C.O.P.D., which you say is related to smoking?
A. That's correct. (Shanks depo., p. 60)
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Plaintiff has the burden of proof with respect to each and every element of compensability within his claim. Parker v.Burlington Industries, 78 N.C. App. 517(1985). In this case, the statute under which plaintiff has brought suit requires that he show that he suffers from asbestosis, which is defined in North Carolina General Statute 97-62 as:
. . . "Asbestosis" shall mean a characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust . . .
2. Plaintiff has not sufficiently or convincingly sustained his burden and is not entitled to the benefits afforded by the Workers' Compensation act. (This is underscored by the fact that the direct testimony of the two treating physicians upon whom plaintiff relied is contradicted by other testimony they gave, or opinions they otherwise expressed). Plaintiff does not suffer from "asbestosis" according to his treating physicians and the Advisory Medical Committee report, which is accepted by the undersigned to be the most convincing evidence.
While the undersigned do not specifically use the standard of reasonable degree of medical certainty as the definitive standard to deny plaintiff here, it has been noted that the two deposed physicians could not testify as to this. However, the undersigned based their decision on the record as a whole and the obvious lack of a diagnosis of "asbestosis" in the first place by the treating physicians.
* * * * * * * * * * * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Plaintiff's claim must under the law be, and it hereby is, DENIED.
2. Each side shall bear its own costs, except that defendant shall pay expert witness fees of $225.00 to Dr. Spangenthal and $400.00 to Dr. Shanks.
IT IS FURTHERMORE ORDERED that this case be REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1994.
 S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ __________________________ W. JOEY BARNES DEPUTY COMMISSIONER
S/ __________________________ WILLIAM L. HAIGH DEPUTY COMMISSIONER
JHB/nwm 06/09/94